Fred T. MACKEY, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 17200.

United States Court of Appeals Seventh Circuit.

June 4, 1969.

William M. Ward, Robert J. Downing, Chicago, Ill., for plaintiff-appellant; Raskin, Downing & Dammann, Chicago, Ill., of counsel.

Mitchell Rogovin, Asst. Atty. Gen., Tax Division, John M. Brant, Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for defendant-appellee; Alfred R. Uzis, Asst. U. S. Atty., of counsel.

Before CUMMINGS and ,KERNER, Circuit Judges, and HOFFMAN, District Judge.[1]

HOFFMAN, District Judge.

The question presented for decision is whether a conviction for income tax evasion should be set aside on collateral attack because the trial court admitted into evidence the defendant's federal gambling tax returns which, the Supreme Court has subsequently held, the defendant could not have been required to file over a timely claim of the privilege against self-incrimination. We conclude that the question must be answered in the negative, and affirm.

Defendant was convicted on March 24, 1964, of five charges of income tax evasion committed by means of false and fraudulent returns for the calendar years 1956 through 1960, in violation of Section 7201, Internal Revenue Code of 1954, 26 U.S.C. Sec. 7201. He was sentenced to concurrent terms of five years imprison-

1. Judge Hoffman is sitting by designation from the United States District Court for the Northern District of Illinois.

ment, and a fine of $10,000, on each count. Upon a prior appeal, this Court affirmed the conviction, 345 F.2d 499 (1965), and the United States Supreme Court denied certiorari, 382 U.S. 824, 86 S.Ct. 54, 15 L.Ed.2d 69.

The prosecution proceeded upon a net worth theory, predicated upon a showing that defendant's total assets had increased during the period in question by an amount which could not be accounted for by his reported income. In such a prosecution, "[p]roof of a likely source, from which the jury could reasonably find that the net worth increase sprang," is an essential element of the case. Holland v. United States, 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954). As stated upon the prior appeal, "Government's theory was that the source of defendant's excessive net worth increases was a policy wheel operation which defendant admitted conducting and that the excess of $4000 per week * * * was from profits earned by defendant on this operation." 345 F.2d, at 501. This theory was borne out by the proof. "Defendant concedes that he was a policy wheel operator during the years in question. There was no direct evidence that any of defendant's alleged unreported income was obtained from his policy wheel operation. Direct evidence is not required." 345 F.2d, at 506–507.

One type of proof establishing this likely source of unreported income was a series of sixty monthly federal gambling excise tax returns filed by defendant during the years in question. These returns, on Form 730, were required to accompany the payment of the ten per cent excise tax on wagering receipts imposed by Section 4401 of the Internal Revenue Code, 26 U.S.C. Sec. 4401; Treas.Reg. Sec. 44.4011(a)–1(a). At the trial, defendant objected to the introduction of these returns on the ground that they were cumulative, since their contents were disclosed by Schedule C to the income tax returns already in evidence, and were prejudicial and inflammatory. The District Court overruled this objection, and this Court affirmed, without specific dis-

cussion, finding "no prejudicial error." 345 F.2d, at 507. In neither court did the defendant claim that the return infringed his constitutional privilege against self-incrimination. With the denial of certiorari, the judgment became final and defendant began serving his sentence in December, 1965.

On January 29, 1968, the United States Supreme Court handed down its decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, holding that the federal wagering tax laws violated the privilege against self-incrimination, and that a claim of that privilege bars a prosecution for failure to register, report, or pay the taxes imposed by those laws. Immediately thereafter, defendant filed his motion under Section 2255 of the Judicial Code, 28 U.S.C. Sec. 2255, to set aside the judgment of conviction on the authority of these decisions. Defendant has appealed to this Court from the District Court's denial of this motion.

I.

At the threshold, we are met by the Government's argument that proceedings under Section 2255 are not a substitute for a direct appeal, and are not ordinarily available to set aside a final conviction on the ground that evidence was erroneously introduced and admitted. That argument, supported by a number of decisions in other Circuits, has been put to rest by the Supreme Court's decision in Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (March 24, 1969). Sustaining a motion under Section 2255 based on the admission of evidence produced by unlawful search and seizure in violation of the Fourth Amendment, the Court concluded broadly that, in enacting the Section, "Congress has determined that the full protection of their constitutional rights requires the availability of a mechanism for collateral attack." 394 U.S., at 228, 89 S.Ct., at 1075. Since defendant's claim is premised on the Constitution, his remedy is not foreclosed.

Defendant's motion under Section 2255 rests wholly upon his claim that the reception into evidence of the Form 730 wagering excise tax returns infringed his privilege against self-incrimination conferred by the Fifth Amendment. He did not, however, decline to file the returns, nor did he, when filing them, raise any protest upon that ground. No claim of the privilege was made at the trial, to support his objection to the admissibility of the exhibits, and no question of self-incrimination was presented to this Court in the course of the prior appeal. These failures to invoke the privilege do not work a waiver, in defendant's view, since his silence resulted from reliance upon the Supreme Court's decisions in United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), holding that the wagering taxes did not violate the privilege against self-incrimination. Until these decisions were overruled, after his conviction had become final, by the subsequent decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709 (1968), the defendant reasons, he had no support for a claim of privilege, and his failure to make the claim must be excused.

As the District Court demonstrates in its closely reasoned opinion, a careful reading of the authorities casts doubt on this attempted justification. The prior decisions in *Kahriger* and *Lewis* involved a different tax from the tax here involved: they held only that the wagering *occupation* tax (26 U.S.C. Sec. 4411), as distinguished from the *excise* tax here in issue (26 U.S.C. Sec. 4401), did not violate the privilege against self-incrimination, in part upon the rationale that the occupation tax, to be paid annually in advance, did not involve any possible incrimination for *past* crimes. See United States v. Kahriger, 345 U.S. 22, 32–33, 73 S.Ct. 510 (1953). The excise tax, imposed upon wagering receipts after the fact, would not necessarily survive

under this rationale, and the defendant in Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709 (1968), recognized this distinction by raising a plea of self-incrimination to the charge of failure to pay the *excise* tax here involved, but not to the charge of failure to pay the occupation tax considered in *Kahriger* and *Lewis,* where the plea would have been futile. Moreover, as the District Court points out, all four of the Supreme Court decisions involved a failure to file the required returns; none directly adjudicated the admissibility of returns already filed by the defendant without objection.

## II.

■ There is, however, a more fundamental flaw in defendant's motion. To avoid the consequence of waiver from his failure to claim the privilege, he asserts that the *Marchetti* and *Grosso* decisions worked a marked change in the law. That assertion inevitably presents the question whether those decisions should be applied retroactively, as the standard for review of judgments already final when the new principles were declared, or whether the commands should be confined to prospective application. In a line of cases tracing back to Linkletter v. Walker, 381 U.S. 618, 85 S.C. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court has made it plain that decisions establishing new principles of constitutionality in criminal litigation do not necessarily or automatically apply to cases already closed. The "Court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application." 381 U.S., at 628, 85 S.Ct. at 1737.

■ Whether the principles of *Marchetti* and *Grosso* are to be retroactively applied has yet to be answered directly by the Supreme Court. The criteria which control the question are nonetheless clearly delineated. The retroactivity or nonretroactivity of the decisions is a function of three considerations: "(a) the purpose to be served by the new standards, (b) the extent of the reliance

by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (March 24, 1969); Stovall v. Denno, 388 U.S. 293, 297 (1967); Johnson v. New Jersey, 384 U.S. 719, 727, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966).

Foremost among these factors is the purpose to be served by the new constitutional rule. Falling on one side of the line are standards laid down under the Sixth Amendment, intended to protect the integrity of the fact-finding process and the fairness of the trial itself, which have been applied retroactively under this test. Thus a denial of the right to counsel in any stage of the judicial proceedings taints the validity of any action taken, and warrants relief against the consequences. See, for example, Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (denial of counsel at preliminary hearing); McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (denial of counsel at hearing on revocation of probation). The right to confront adverse witnesses, similarly guaranteed by the Sixth Amendment, is intended to assure the reliability of findings of fact by subjecting the testimony to cross-examination, a purpose which calls for retrospective relief. See Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (confession of co-defendant); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969) (prior testimony of absent witness); Bates v. Nelson, 393 U.S. 16, 89 S.Ct. 50, 21 L.Ed.2d 21 (1968). On the other side of the line, the Fourth Amendment's prohibition against unreasonable searches and seizures, and federal anti-wiretapping laws, are intended to preserve privacy, and the resulting exclusionary rules of evidence are adopted not to exclude unreliable evidence but to deter illegal police action. Retroactive application of such exclusionary rules is not justified when the "misconduct of the police * * * has already occurred and will not be corrected by releasing the prisoners involved." Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 1034 (March 24, 1969); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Within the scope of the Fifth Amendment, the purpose of the Due Process clause to assure fundamental fairness has been held to require retroactivity for rules concerning the presentation of coerced confessions to the jury, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), or concerning lineup procedures which are inherently conducive to mistaken identification. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (March 24, 1969). On the other hand, cases arising under the Fifth Amendment's privilege against self-incrimination involve the congeries of purposes, including the privacy of the individual and the adversary system of adjudication, which that privilege embodies. The "Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values—values, reflecting the concern of our society for the right of each individual to be let alone. * * As we pointed out in Linkletter with respect to the Fourth Amendment rights there in question, 'the ruptured privacy * * * cannot be restored.'" Tehan v. United States ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966). On the basis of these limits of purpose, the Court held that its reinterpretation of the scope of the privilege against self-incrimination did not warrant retroactive application. The holding is re-confirmed in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■■■ Defendant contends, however, that the wagering tax returns constitute coerced confessions, since they were filed under the compulsion of a legal command,

and that retroactivity follows automatically once the question is so characterized. But the compulsion which turns interrogation into a violation of the privilege against self-incrimination is not the same as the coercion and intimidation which make a confession involuntary and a denial of Due Process. See, for example, Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 1139–1140, 22 L.Ed.2d 433 (March 24, 1969). Here there is no suggestion that the defendant's will was overborne, by physical intimidation or coercion, to lead him to a false admission that he was engaged in gambling. The interrogation to which he responded, by filing the wagering tax returns, was addressed to the public at large. Certainly he was subject to a lesser degree of compulsion than a lone defendant singled out by accusation and deprived of personal liberty and support while he is subjected to in custody interrogation by the police. Although such circumstances combine to make the defendant's "statements the product of compulsion" in violation of the policy of the privilege against self-incrimination, as declared in Miranda v. Arizona, 384 U.S. 436, 466, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court has held that the new rule excluding confessions so compelled is not to be given retroactive effect. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The unreliability of the fact-finding process which is the touchstone of retroactivity is simply not threatened by the impersonal command of the wagering tax laws. Cf. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (nonretroactivity of requirement of counsel during line-up procedures); DeStefano v. Woods, 392 U.S. 631, 88 S. Ct. 2093, 20 L.Ed.2d 1308 (1968) (nonretroactivity of jury trial for serious criminal contempts).

In deciding that the purpose of the rules announced in *Marchetti* and *Grosso* (390 U.S. 39 and 62, 88 S.Ct. 697, 709, 19 L.Ed.2d 889, 906), does not call for retro-

activity in the case before us, we do not mean to intimate how the different question of retroactivity would be decided in other situations. Whether the ruling of *Marchetti* and *Grosso* should be applied retroactively to defendants in the situation of Kahriger and Lewis themselves (345 U.S. 22; 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475), who have claimed the privilege and have been convicted of failure to file the returns, presents considerations not before us, since in such cases recognition of the privilege would negate the very offense for which the defendants are imprisoned. See Graham v. United States, 407 F.2d 1313 (6th Cir., March 10, 1969), denying retroactivity in that situation. Here the defendant was charged not with failure to file the returns, nor even of a crime of gambling, but of evasion of income taxes. The purpose of the rule of *Marchetti* and *Grosso* has no application to warrant retroactivity here. Its object was to protect the individual against self-incrimination under the "comprehensive system of federal and state prohibitions against wagering activities * * *." Marchetti v. United States, 390 U.S. 39, 48, 88 S.Ct. 697, 703 (1968). If gambling were not a crime, or if defendant had been granted immunity from all gambling prosecutions, he could have claimed no privilege by reason of potential income tax jeopardy against filing the required wagering excise tax returns, any more than against the filing of the income tax return itself. See United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). In this prosecution, the returns were no more incriminating than a report of any lawful business activity as a likely source of unreported income. Under the circumstances, the purpose of *Marchetti* and *Grosso* is extraneous to the conviction, and does not call for retrospective application.

■ The factors of reliance and administrative difficulty which control, along with purpose, the prospective or retroactive effect of the new rule lead to the same conclusion of nonretroac-

tivity. An avowed purpose of Congress in enacting the wagering tax system was to provide information to interested prosecuting authorities. Marchetti v. United States, 390 U.S. 39, 58–59, 88 S.Ct. 697 (1968). This object was aided by the Supreme Court's earlier decisions in *Kahriger* and *Lewis,* sustaining the constitutionality of the scheme. Law enforcement officers were thus expressly invited to make use of the information disclosed, and to abandon their pursuit of evidence through other channels in reliance upon congressional and judicial approval of this offered source. Retroactivity was denied in Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), when the law enforcement officials were guilty of a plain violation of federal laws against wiretapping, and had relied only upon a judicial failure to enforce the laws by excluding the resulting evidence in state courts. Here the evidence was gathered with the blessings of federal law. Reliance was accordingly justified and extensive. "Evidence of the possession of a federal wagering tax stamp, or of payment of the wagering taxes, has often been admitted at trial in state and federal prosecutions for gambling offenses; such evidence has doubtless proved useful even more frequently to lead prosecuting authorities to other evidence upon which convictions have subsequently been obtained." Marchetti v. United States, 390 U.S. 39, 47–48, 88 S.Ct. 697, 702 (1968).

As a result of such reliance, the burdens which would be imposed upon the administration of justice by retroactive application of the ruling would be formidable. The third factor among the criteria of prospective effect is thus also satisfied. With a rule of retroactivity, every gambling conviction could be reopened upon a claim that disclosures under the federal laws had contributed to the conviction. The rule would require the courts to re-examine the total evidence in each case, and "would necessarily oblige the state [or federal] prosecuting authorities to establish in each case that their evidence was untainted by any connection with information obtained as a consequence of the wagering taxes * * *." Marchetti v. United States, 390 U.S. 39, 59, 88 S.Ct. 697, 708 (1968). See also Desist v. United States, 394 U.S. 244, 80 S.Ct. 1030, 1033 (March 24, 1969).

It follows that the District Court correctly denied defendant's motion to set aside the conviction under Section 2255.

Judgment affirmed.