**UNITED STATES of America**

v.

**James ARMIENTO and Edward Jernek, Defendants.**

**No. 66 Cr. 967.**

United States District Court,
S. D. New York.

Jan. 6, 1970.

Whitney North Seymour, Jr., U. S. Atty., by John W. Nields, Jr., Asst. U. S. Atty., Foley Square, N. Y., for the United States.

H. Eliot Wales, New York City, for defendants.

LASKER, District Judge.

This is a renewal of a motion to suppress. The original motion was denied by Judge Cooper on March 2, 1967.

Since then the United States Supreme Court has ruled in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968), that the occupational tax registration provisions of the Internal Revenue Act, 26 U.S.C. §§ 4411 and 4412, "may not be employed to punish criminally those persons who have defended a failure to comply with their requirements with a proper assertion of the privilege against self-incrimination." *Id.* at 42, 88 S.Ct. at 699. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968), applied the reasoning of *Marchetti* to the gambling excise tax, 26 U.S.C. § 4401, and the conspiracy law, 18 U.S.C. § 371, insofar as the latter is applied to wagering tax violations.

The defendants contend that, as a result of *Marchetti* and *Grosso*, evidence seized on the basis of two search warrants and an arrest warrant, which were in turn founded on affidavits substantially supported by information relating to violations of the wagering tax provisions, should be suppressed.[1] For the

---

1. The affidavit of Arthur Rubenstein, sworn to the 1st day of June, 1966, supporting the warrant for the search of Apartment 6C, 110 East 36th Street, New York, New York, is typical of the affidavits and complaints in issue here. The complaints and affidavits are substantially identical in their assertions.

"BEFORE EARLE N. BISHOPP, United States Courthouse, New York, N.Y. 10007

"The undersigned being duly sworn deposes and says:

"That he has reason to believe that on the premises known as Apartment 6C, 110 East 36th Street, New York, New York, in the Southern District of New York, there is now being concealed certain property, namely gambling and wagering paraphernalia, including but not limited to bet slips, records of wagering business, other books and papers used in the conduct of the wagering business, telephones and money, which are being used as instrumentalities in the commission of a violation of Title 26, United States Code, Sections 4401, 4411, 7262,

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

"1. Investigations made in the course of affiant's official duties reveal the following facts:

"a. Statements personally made to deponent in the course of his official duties by Special Agents of the Intelligence Division, Internal Revenue Service, United States Treasury Department, that said Special Agents, while acting in an undercover capacity, personally placed wagers with JOHN DOE, a/k/a 'Jimmy' and 'Mr. Peters', meaning thereby to describe a white male, approximately 45 years old, with black hair and greying temples, weighing approximately 185 pounds and about 5'11" tall in person or by phone on at least ten occasions between April 1, 1966 and May 31, 1966.

"b. A search of the official records of the Internal Revenue Service in both the Manhattan and Brooklyn District offices fails to reveal any record of any person having paid the wagering tax imposed by Title 26, United States Code, Section 4411, who uses the names or aliases of said John Doe, or meeting the description of said John Doe and accepting wagers in the locations used by said John Doe.

"c. Surveillance of said John Doe entering Apartment 6C, 110 East 36th Street on two separate occasions between May 10, 1966 and May 26, 1966. On each occasion, said John Doe entered said Apartment 6C between 10:00 a. m. and 10:20 a. m. On May 10, 1966, said John Doe entered Apartment 6C at approximately 10:15 a. m. carrying a brown paper bag believed to contain wagering paraphernalia. At approximately 10:35 a. m. said John Doe exited 110 East 36th Street without the brown paper bag. On another occasion, said John Doe was observed entering the building known as 110 East 36th Street carrying a brown paper bag at approximately 10:20 a. m. At approximately 10:55 a. m. said John Doe exited said 110 East 36th Street and at 11:05 a. m. said John Doe entered the building known as 150 East 35th Street.

"On four occasions, said John Doe was observed exiting 110 East 36th Street and observed on two occasions entering apartment actually marked 71, but meaning Apartment 710 on the seventh floor of 150 East 35th Street.

"On May 13, 1966, said John Doe was observed entering Apartment 6C, 110 East 36th Street at approximately 10:02 a. m. An undercover agent observed the door of Apartment 6C from 10:02 a. m. and 10:50 a. m. No

reasons set forth below the motion is denied.

The four-count indictment originally charged the defendants with (1) using a wire communication facility for the transmission in interstate commerce of bets and wagers in violation of Title 18, U.S.C. §§ 2 and 1084; (2) using a facility in interstate commerce to carry on a gambling enterprise in violation of Section 986 of the Penal Law of New York, McKinney's Consol.Laws, c. 40 (Title 18, U.S.C. §§ 2 and 1952); (3) failing to pay the special tax imposed by Title 26, U.S.C. § 4411; and (4) failure to supply the information required by Title 26, U.S.C. § 4412.

Counts 3 and 4 have been dismissed with the consent of the government because the defendants have properly asserted their Fifth Amendment defenses within the holdings of *Marchetti* and *Grosso*.

In view of the dismissal of counts 3 and 4, the only charges remaining against the defendants are those of using interstate facilities to violate New York and Federal anti-gambling and racketeering statutes.

The issue now raised, as distinct from the issue before Judge Cooper, which related solely to the question of whether the underlying affidavits validly established probable cause for the issuance of the warrants, is whether evidence pertaining to gambling and racketeering should be suppressed on the ground that the supporting affidavits for the warrants permitting the searches consisted of information relating primarily to wagering tax violations.

The defendants claim, on the authority of Lee v. Kansas City, 390 U.S. 197, 88 S.Ct. 901, 19 L.Ed.2d 1037 (1968), De Cesare v. United States, 390 U.S. 200, 88 S.Ct. 900, 19 L.Ed.2d 1036 (1968), Piccioli v. United States, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968), and Stone v. United States, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968), that *Marchetti* and *Grosso* should be retroactively applied and that under the holding of Silbert v. United States, 289 F. Supp. 318 (D.C.Md.1968), warrants issued on the basis of wagering tax violations cannot survive *Marchetti* and *Grosso* and cannot be used in an interstate gambling prosecution. Although in the light of Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), and United States v. Bennett, 415 F.2d 1113, decided by the Court of Appeals of this Circuit on September 9, 1969, defendants' position as to retroactive application of *Marchetti* and *Grosso* appears unfounded, I find it unnecessary to determine that question, since it is my view that the warrants in question remain valid even under the holdings of *Marchetti* and *Grosso*.

The defendants reason that under *Marchetti* and *Grosso* there is no longer

one exited the apartment during that time. During this same period, another undercover agent placed a bet with said John Doe by telephone. The undercover agent outside the door of Apartment 6C heard the telephone ringing in said apartment while said John Doe was therein and the telephone being answered.

"On several occasions, the last of which was on May 26, 1966, after said John Doe was observed entering Apartment 710, on the seventh floor of 150 East 35th Street, an undercover agent maintained surveillance of said apartment. At the same time another undercover agent placed a bet with said John Doe by telephone. During this period, said John Doe did not leave Apartment 710, 150 East 35th Street. The undercover agent while outside the door of Apartment 710 heard a telephone ringing and being answered.

"d. The records of the New York Telephone Company revealed that non-published telephone number OR 9–1674 is registered to J. Jiranek, Apartment 6C, 110 East 36th Street.

/s/ Arthur Rubenstein

"Sworn to before me, and subscribed in my presence this 1st day of June 1966

/s/ Earle N. Bishopp
U. S. COMMISSIONER
SOUTHERN DISTRICT
OF NEW YORK"

any obligation for gamblers to register or to pay the wagering tax, and, therefore, that warrants based on information showing a failure to perform these acts are legally insufficient, since no probable cause existed to believe that a crime would be committed. The government, on the other hand, contends that the warrants in question are not affected by the holdings of *Marchetti* and *Grosso* because the sole purpose of the exclusionary rule under the Fourth Amendment—to deter improper conduct by law enforcement officers—is not applicable here, where the activity of the law enforcement officers was clearly proper, since the wagering tax provisions stood legally unimpaired at the time of the affidavits and search warrants. I add that, in my opinion, the affidavits and warrants still stand unimpaired, since the Supreme Court in *Marchetti* and *Grosso* did not hold the statutes as such unconstitutional. Precisely establishing the limits of its holding, the Court stated in *Marchetti*, 390 U.S. at 61, 88 S.Ct. at 709:

> "We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements."

Here, of course, the defendants will not be criminally punished for failure to comply with the requirements of the statute, the counts originally charging them with failure to comply having been dismissed. That the limited holding in *Marchetti* did not impair the validity of search warrants based on the wagering tax statute is further supported by the concurring opinion of Justices Stewart, Brennan and White in Stanley v. Georgia, 394 U.S. 557, at 570–571, 89 S.Ct. 1243, at 1251, 22 L.Ed.2d 542. There a warrant was issued by the Commissioner for the seizure of "equipment, records, and other material used in or derived from an illegal wagering busi-

ness." As Mr. Justice Stewart stated, on the basis of such a warrant:

> "There can be no doubt, * * *, that the agents were lawfully present in the appellant's house, lawfully authorized to search for any and all of the items specified in the warrant, and lawfully empowered to seize any such items they might find."

Defendants cite for their position: United States v. $125,882 in U. S. Currency, 286 F.Supp. 643 (S.D.N.Y.1968), and Silbert v. United States, supra. In United States v. Currency, Judge Tyler held that in the light of *Marchetti* and *Grosso*, the defendants could not constitutionally be punished by compelling forfeiture of money used in gambling operations. United States v. Currency is inapposite, however, since Judge Tyler based his ruling on the theory that "a forfeiture of property was deemed by the court to be an impermissible penalty to impose on the assertion of the Fifth Amendment privilege." (p. 645). Here, we have no penalty imposed for the assertion of the Fifth Amendment privilege. To the contrary, the defendants have asserted their Fifth Amendment privilege and, as indicated above, the counts based on the wagering tax statute have accordingly been dismissed with the consent of the government and the approval of the court, and no further Fifth Amendment assertions with regard to the remaining counts of the indictment have been made.

In *Silbert*, supra, the court concluded that, because the affidavits in question were "clearly underpinned and supported by the extensive allegations of federal wagering tax law violations," insufficient foundation for the alleged violations of the conspiracy and interstate racketeering laws existed in view of the fact that the affidavits' "underpinning and support has since been destroyed by *Marchetti* and *Grosso*." (289 F.Supp. p. 320). I find the reasoning of Silbert unpersuasive, and it is clear that the holding is a minority view, opposed to a substantial number of holdings to the contrary. The reasoning of *Silbert* has been

refuted in Washington v. United States, 402 F.2d 3 (4th Cir. 1968), United States v. Yeagle, 299 F.Supp. 257 (E.D.Ky. 1969), and State v. Gerardo, 53 N.J. 261, 250 A.2d 130 (1969). As the court stated in *Washington*, 402 F.2d at 6:

> "The Supreme Court did not invalidate the wagering tax statute; it did not abolish the criminal offenses therein specified; it did not say that an indictment or an information would not lie. The carefully circumscribed holding is that a defendant may not be *convicted* of a criminal violation of the wagering tax laws *if* he has properly claimed his constitutional privilege against self-incrimination. Under the circumstances, we conclude that where, as here, there exists probable cause for belief that an offense has been committed,[2] * * * a valid search warrant may issue even though the Government may be unable to convict the defendant if he properly raises his claim of privilege against self-incrimination." (Emphasis in original.)

Furthermore, as Judge Weintraub so effectively stated in State v. Gerardo, supra, 250 A.2d at 133:

> "The Fourth Amendment does not call for the suppression of evidence obtained in violation of its provisions.

The doctrine of suppression is judge-made, a device adopted upon the belief that there was no effective remedy for a violation of its terms. Suppression is ordered, not to rectify a wrong already done, but to deter future violations. So in Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677 (1960), the Court said:

> ' * * * The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. See Eleuteri v. Richman, 26 N. J. 506, 513, 141 A.2d 46, 50.'

> "The purpose, then, is to deter insolence in office. To that end, the suppression of the truth is tolerated even though the price will be paid, as we have said, by the defendant's next victim. But it would be a waste of the individual's first right, his right to be protected from crime, to set the offender free when there is no trace of official arrogance."

Here, it is clear that the conduct of the agents upon whose statements the affidavits were given and the warrants were issued was entirely proper and not tinged

---

2. In Washington v. United States, supra, defendants conceded that probable cause existed at the time the warrant was issued. In this case defendants have not made such a concession, but Judge Cooper's decision of March 2, 1967 so held and I find no reason to decide differently.

The defendants here have not claimed that the supporting affidavits are insufficient under the holding of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1968), and it is clear that they are not. The defects of the affidavit in that case are absent here. The leads in the instant case were provided by special undercover agents and not by an informer. Most importantly, the affidavits were based on reports from the special agents of personal observations of the defendants and of transactions personally carried out between the agents and the defendants. Surveillance here was accompanied by telephone calls personally placed by the agents. The affidavits referred to material derived from ten different incidents. Finally, the affiants examined the Internal Revenue Service files and personally discovered that defendants had failed to register, an element of one of the crimes which was the subject of the investigation. In *Spinelli*, in contrast, most of the affidavit reported peripheral issues and "innocent-seeming activity" (393 U.S. at 414, 89 S.Ct. 584), such as seeing defendants in various cars or entering various buildings, and the affidavit was based merely on statements from "reliable informants" whose reliability was not established within the affidavit itself. In addition, it should be noted that the affidavits here are not restricted to information relating to violations of the wagering tax statutes.

 

in any way with that insolence which the Fourth Amendment seeks to deter.

While the defendants themselves make no claim that *Marchetti* and *Grosso* raise a question of self-incrimination under the Fifth Amendment,[3] the government has treated the subject in its brief on this motion. I agree with the government's view that the effect of the *Marchetti* and *Grosso* holdings is not such as to produce in this case a Fifth Amendment question as distinct from a Fourth Amendment question with regard to the suppressibility of the evidence seized under the warrants in question. See, for example, United States v. Boiardo, 408 F.2d 112 (3d Cir. 1969), and Rainey and Bowens v. United States, Docket No. 36064 (S.D.N.Y., July 31, 1969). As Judge McLean remarked in *Rainey:*

> "Testimony of the federal officers as to what they observed may incriminate plaintiffs, but it does not involve any self-incrimination on their part."

The motion to suppress is denied.

It is so ordered.

See also D.C., 51 F.R.D. 300.

---

3. The Court in *Silbert*, supra, had reasoned that subjecting a gambler to being searched if he failed to comply with the registration requirement itself was coercion, and thus a violation of the gambler's Fifth Amendment rights.