UNITED STATES of America,
Appellee,

v.

James ARMIENTO and Edward Jernek,
Defendants-Appellants.

No. 231, Docket 34984.

United States Court of Appeals,
Second Circuit.

Argued Sept. 30, 1970.

Decided June 17, 1971.

Certiorari Denied Oct. 12, 1971.
See 92 S.Ct. 94.

John W. Nields, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., for Southern Dist. of New York, and William B. Gray, Asst. U. S. Atty., of counsel), for appellee.

H. Elliot Wales, New York City, for defendants-appellants.

Before FRIENDLY, Chief Judge, and DANAHER * and HAYS, Circuit Judges.

DANAHER, Circuit Judge:

These appellants on brief told us that they are appealing "solely" from the pretrial denial of a motion to suppress. Judge Lasker's opinion, United States v. Armiento, 326 F.Supp. 960 (S.D.N.Y. Jan. 6, 1970), recited that the detailed affidavits predicating the search warrants, valid when issued June 1, 1966, adequately established probable cause. They reflected personal observations of special agents of the Intelligence Division of the Treasury Department, transactions carried out between the agents and the defendants, and telephone calls personally placed by the agents. Judge Lasker explained that "an element of one of the crimes which was the subject of the investigation" was an apparent failure to register [26 U.S.C. § 4412], concluding "In addition, it should be noted that the affidavits are not restricted to violations of the wagering tax statutes."

* Senior Circuit Judge of the District of Columbia Circuit, sitting by designation.

The appellants contended that the search warrants should have been retroactively invalidated pursuant to the Court's rulings in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed. 2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed. 2d 906 (1968). Judge Lasker rejected that contention, and so do we.[1]

Let it be noted at once that, with the consent of the Government, the district court, taking account of the *Marchetti-Grosso* rulings, dismissed the third count which had charged the appellants with failing to pay the special tax imposed by 26 U.S.C. § 4411, and the fourth count which had charged a failure to supply the information required by 26 U.S.C. § 4412. Their Fifth Amendment privilege against compulsory self-incrimination was thus recognized[2] as a valid defense to their *prosecution* on these counts.

## I.

After the dismissal of the third and fourth counts, the appellants stood charged in the first count, with the use of a wire communication facility for the interstate transmission of bets in violation of 18 U.S.C. § 1084; and in the second count with violation of 18 U.S.C. § 1952, the use of a facility in interstate commerce to carry on a gambling enterprise in violation of New York State law.[3] These statutes had been passed in aid of the Government's anti-racketeering program, and were in no way related[4] to an improper exercise of the Government's power "to assess and collect taxes on unlawful gambling activities." United States v. United States Coin & Currency, *supra*, note 1, 401 U.S. at 715, 91 S.Ct. at 1043, 28 L.Ed.2d 434. Thus these appellants have not been convicted of failure to register and to pay the tax. Rather, they were convicted[5] because of

1. Following argument on September 30, 1970, we deferred decision to await possible guidance from the Supreme Court's impending decisions in United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 and Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404. Upon release of the Court's opinions in those cases, April 5, 1971, we called for supplemental briefs that respective counsel might take account of the impact of those opinions on the issue pending here.

2. Accordingly, Judge Lasker denied the appellants' motion to suppress, ruling that they thereupon stood charged only "with using interstate facilities to violate New York and Federal anti-gambling and racketeering statutes."

Retroactivity was thus accorded to the extent here pertinent. See this court's disposition under not dissimilar circumstances in United States v. Kelley, 3 Cir., 395 F.2d 727, 729 (1968). It is obvious enough that problems in the area of retroactive application of newly-announced constitutional rulings have not found automatic resolution. See, *e.g.*, inter alia, Mackey v. United States, *supra*, note 1, United States v. United States Coin & Currency, *supra*, note 1, and compare discussions in Williams and Elkanich v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (April 5, 1971) and

California v. Byers, 402 U.S. 424, 91 S. Ct. 1535, 29 L.Ed.2d 9 (May 17, 1971).

3. These statutes have nothing to do with and are not part of a "system" of tax collection such as engaged the notice of the Court in Marchetti v. United States, *supra*, and Grosso v. United States, *supra*. See Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (April 5, 1971). The conviction of these appellants did not depend upon compelled statements within the meaning of the Fifth Amendment.

4. See Mackey v. United States, *supra*, note 1; and cases hereinafter discussed in our text.

Cf. United States v. Knox, 396 U.S. 77, 80, 82, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); Postell v. United States, 429 F. 2d 528, 529 (6th Cir.1970); Mengarelli v. United States, 426 F.2d 985, 986 (9th Cir. 1970).

5. They neither testified nor called witnesses. They freely conceded on brief that they were bookmakers in Manhattan accepting bets on horse races and baseball games. They operated out of two premises, including Apartment 6C, 110 East 36th Street, with a telephone in each, so set up that if the phone rang in one apartment, it would ring in the other as well. Bettors were given the telephone number of an answering serv-

the evidence adduced through and the testimony of the special agents of the Treasury after a trial running through some five court days.

## II.

In contrast, and quite obviously to be distinguished from the circumstances in the instant case, we note that initially one Angelini had already been convicted of failure to register or to pay the wagering tax in violation of 26 U.S.C. §§ 4411 and 4412, United States v. Angelini, 346 F.2d 278 (7 Cir.), cert. denied 382 U.S. 838, 86 S.Ct. 86, 15 L.Ed.2d 80 (1965). With that much in mind, we take account also of the additional background [6] predicating United States v. United States Coin & Currency.[7] There Mr. Justice Harlan emphasized that the Court in *Marchetti-Grosso* "took pains" to make clear that "It was only the method Congress had adopted in collecting the tax that raised the Fifth Amendment question"—and *"only this method* of tax collection \* \*

was subject to constitutional objection." [8] (Emphasis added.) In that case it was held that the wagering funds of the gambler Angelini were not to be forfeited on account of his earlier failure to comply with Sections 4411 and 4412 for "the *conduct* being *penalized* is constitutionally immune from *punishment."* [9] (Emphasis added.)

## III.

The Eighth Circuit sat *in banc* to consider whether or not search warrants usable [10] when issued in connection with violations of 26 U.S.C. §§ 4411 and 4412, became unusable after the *Marchetti-Grosso* rulings came down. There as here, charges of violation of the gambling tax statutes were dismissed. Chief Judge Van Oosterhout commented, United States v. Hanon: [11]

In our present case, defendants are not being punished criminally or otherwise for failure to comply with the wagering tax laws. They are being

---

ice where, upon asking for "Mr. Peters" they would leave their names and phone numbers. "Mr. Peters" would return their calls, and they would place their bets.

An Internal Revenue Service Agent on several occasions placed wagers directly with Armiento and was given a certain number to call in the future when betting. Bettors settled their accounts with Jernek personally. One bettor from New Jersey telephoned on some occasions to "Mr. Peters," subsequently receiving a return call from him and placing his bet each time.

Compare the appellants' own version of the facts, thus paraphrased, with the gamblers' method of operation as described in United States v. Kelley, *supra*, note 2, 395 F.2d at 729.

6. The Government next filed its libel against Angelini's gambling funds and secured an order of forfeiture which the Seventh Circuit affirmed, 379 F.2d 946 (1967), but *certiorari* was granted, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968) and the case was remanded. Then upon re-consideration the Seventh Circuit noted, 393 F.2d 499, 500 (1968) that the only apparent purpose of the forfeiture statute was to punish viola-

tions of "Sections 4411 and 4412 of the Internal Revenue Code by taking away money used in committing the violations."

7. *Supra*, note 1.

8. United States v. United States Coin & Currency, *supra*, note 1, 401 U.S. at 717, 91 S.Ct. at 1043, 28 L.Ed.2d 434.

9. *Id.*, 401 U.S. at 724, 91 S.Ct. at 1046.

10. To the extent that a Fourth Amendment question could be said to have been presented in the instant case, we may deem it resolved on the basis of United States v. Hanon, 428 F.2d 101, 104 (8 Cir. *in banc* 1970), cert. denied 400 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (May 3, 1971), with Mr. Justice Douglas *alone* noting that he would have granted certiorari, and with Mr. Justice Blackmun taking no part, having participated as one of the majority in the Eighth Circuit *in banc* consideration of Hanon. Compare United States v. Bennett, 415 F.2d 1113, 1114, 1115 (2 Cir.), cert. denied 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969).

And see Mackey v. United States, *supra*, note 1.

11. United States v. Hanon, *supra*, note 10, 428 F.2d at 106.

punished for violating § 1952, proscribing interstate gambling. The failure to register or pay the tax is not an element of the § 1952 charge. Defendants have not complied with the registration or tax laws and no evidence has been offered or received in their trial before the jury with respect to violation of the wagering tax laws. The only way the wagering tax is here involved is that it offers probable cause under the Fourth Amendment for the search. Probable cause for the search is a *Fourth Amendment issue and such* issue has heretofore been discussed and decided adversely to the defendants.

In United States v. Tiktin, 427 F.2d 1027 (6 Cir. 1970), the Government had appealed from a district court order granting the appellees' motion to suppress. Reversing, and following the reasoning of the Fourth Circuit in Washington v. United States, 402 F.2d 3, 6 (1968), Judge Edwards concluded that evidence seized pursuant to a search warrant issued upon the basis of an alleged violation of the federal wagering tax laws was not to be suppressed in a prosecution under the Anti-Racketeering Act.[12] The Supreme Court denied certiorari May 3, 1971, 402 U.S. 950, 91 S.Ct. 1608, 29 L.Ed.2d 120.

Turning again to Washington v. United States, *supra,* Judge Boreman wrote, 402 F.2d at 6:

" * * * The carefully circumscribed [*Marchetti-Grosso*] holding is that a defendant may not be *convicted* of a criminal violation of the wagering tax laws *if* he has properly claimed his constitutional privilege against self-incrimination." (Emphasis in original.)

Thus he concluded a valid search warrant may issue even though the Government may be unable to *convict* a defendant who properly raises his claim of privilege against self-incrimination.

The Supreme Court denied certiorari in Washington, 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145, where the May 17, 1971 Journal reports the dissenting views of Justices Douglas, Black and Brennan. Ordinarily, to be sure, the mere denial of certiorari may lack significance. But where in dissent it is so sharply urged that United States v. United States Coin & Currency should have controlled the disposition of the petition, the majority's *rejection* of that argument surely is entitled to important weight.

The Court itself supplied that weight in its May 4, 1971 order granting the Government's petition for certiorari in United States v. Zizzo, 402 U.S. 938, 91

---

12. Compare DiPiazza v. United States, 415 F.2d 99, 107 (6 Cir. 1969) citing Washington v. United States, *supra,* where Judge Phillips declined to exclude evidence seized pursuant to warrants which were proper authority for the searches at the time they were issued and executed. So "when the evidence is introduced to show the commission of crimes other than wagering tax violations," it was properly received.

The Supreme Court denied certiorari on May 3, 1971, 402 U.S. 949, 91 S.Ct. 1606, 29 L.Ed. 119.

13. The Seventh Circuit's opinion in Zizzo v. United States, 431 F.2d 913 (1970) discloses that Section 2255 relief had been sought by Zizzo following his earlier conviction, affirmed in 338 F.2d 577 (7 Cir. 1964). He then had been charged with violating 18 U.S.C. § 1952, and at trial, wagering tax forms had been received in evidence against him. After Marchetti-Grosso, Zizzo sought retroactive relief which was granted by the court over the opposition of the Government, then relying upon the Seventh Circuit's own opinion in Mackey v. United States, 411 F.2d 504 (1969).

Judge Campbell, noting the pendency before the Court of United States v. United States Coin & Currency and Mackey v. United States, nevertheless undertook to distinguish *Mackey, supra,* as not controlling Zizzo, 431 F.2d at 916.

Obviously the Supreme Court ruled otherwise, and the "system of federal and state prohibitions" discussed in Marchetti v. United States, *supra,* is not at all as "comprehensive" as the Seventh Circuit had taken it to be.

S.Ct. 1615, 29 L.Ed.2d 106. The Court vacated the Seventh Circuit's *Zizzo* judgment [13] and *remanded "for reconsideration in light of this Court's decision in Mackey v. United States," supra,*[14] note 1. (Emphasis added.)

We are satisfied that Judge Lasker correctly perceived that these appellants had been charged with violations of unchallenged federal statutes totally unrelated to the wagering tax provisions under consideration in *Marchetti-Grosso*.[15] Thus the evidence seized by the agents under the circumstances described was not subject to exclusion. Accordingly we find no error in his denial of the pre-trial motion to suppress, and the convictions are

Affirmed.

14. Concurring in the judgment in California v. Byers, *supra*, note 2, Mr. Justice Harlan observed that the *Marchetti-Grosso* "line of cases should be explicitly limited by this Court." 402 U.S. 424 at 453, 91 S.Ct. 1535 at 1550.

15. Those cases "neither said nor in our view implied that professional gamblers should be protected against the discovery of their otherwise unlawful acts by procedures which would not compel them to aid in their own incrimination," wrote Chief Judge Hastie in United States v. Boiardo, 408 F.2d 112, 115 (3 Cir. 1969), followed in Rainey v. United States, 423 F.2d 628 (2 Cir. 1970). And see United States v. Prevatt, 414 F.2d 239 (5 Cir. 1969).