# UNITED STATES *v.* KNOX

No. 17.   Argued October 14, 1969—
Decided December 8, 1969

*Mervyn Hamburg* argued the cause for the United States.   With him on the briefs were *Solicitor General Griswold, Assistant Attorney General Wilson, Francis X. Beytagh, Jr.,* and *Beatrice Rosenberg.*

*J. Edwin Smith* argued the cause and filed a brief for appellee.

MR. JUSTICE HARLAN delivered the opinion of the Court.

Appellee Knox has been charged with six counts of violation of federal law in connection with his wagering activities. The first four counts of the indictment charge that between July 1964 and October 1965 he engaged in the business of accepting wagers without first filing Internal Revenue Service Form 11–C, the special return and registration application required by § 4412 of the Internal Revenue Code of 1954, and without first paying the occupational tax imposed by § 4411 of the Code. Counts Five and Six charge that when Knox did file such a form on October 14, 1965, and when he filed a supplemental form the next day, he knowingly and willfully understated the number of employees accepting wagers on his behalf—in violation of 18 U. S. C. § 1001, a general criminal provision punishing fraudulent statements made to any federal agency.

Knox moved to dismiss the indictment, asserting that this Court's decisions in *Marchetti* v. *United States,* 390 U. S. 39 (1968), and *Grosso* v. *United States,* 390 U. S. 62 (1968), had held invalid [1] the provisions of the wagering tax laws that required him to file the special return. The Government in response stated that it would not pursue the first four counts but argued that Knox's objections based on the *Marchetti* and *Grosso* decisions were "largely irrelevant" to Counts Five and Six. The District Court disagreed. It dismissed all six counts, reasoning that Knox could not be prosecuted for his "failure to answer the wagering form correctly" since his Fifth Amendment privilege against self-incrimination would have prevented prosecution for "failure to answer the form in any respect." 298 F. Supp. 1260, 1261. The United States filed a direct appeal to this Court

---

[1] But see nn. 3, 6, *infra.*

from the dismissal of the two counts charging violations of § 1001, and we noted probable jurisdiction, 394 U. S. 971 (1969).[2]

In *Bryson* v. *United States, ante,* p. 64, decided today, we reaffirmed the holding of *Dennis* v. *United States,* 384 U. S. 855 (1966), that one who furnishes false information to the Government in feigned compliance with a statutory requirement cannot defend against prosecution for his fraud by challenging the validity of the requirement itself. *Bryson,* like *Dennis,*

---

[2] Such a direct appeal is authorized by the Criminal Appeals Act, 18 U. S. C. § 3731, which provides: "An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

.        .        .        .        .

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy."

The District Court sustained the claim of privilege not on the basis of facts peculiar to this case but on the basis of its conclusion that the Fifth Amendment provides a defense to any prosecution under § 1001 based on misstatements on a Form 11–C. This amounts to a holding that § 1001, as applied to this class of cases, is constitutionally invalid. The generality of the impact of the District Court's holding appears to us to render our jurisdictional holding *a fortiori* compared to analogous jurisdictional holdings in such cases as *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282 (1921); *Fleming* v. *Rhodes,* 331 U. S. 100, 102–104 (1947); *Wissner* v. *Wissner,* 338 U. S. 655 (1950); *Department of Employment* v. *United States,* 385 U. S. 355, 356–357 (1966). We prefer to rest our jurisdiction on this aspect of § 3731 rather than, as advocated by the Government, the statute's "motion in bar" provision, in light of the fact that the scope of the latter provision will be the subject of full-dress consideration, as will certain problems under the "dismissing any indictment" provision not present in this case, in *United States* v. *Sisson,* consideration of jurisdiction postponed, *post,* p. 812.

involved § 9 (h) of the National Labor Relations Act, as amended by the Taft-Hartley Act, 61 Stat. 146, which was attacked as an abridgment of First Amendment freedoms and as a bill of attainder forbidden by Art. I, § 9, of the Constitution. In contrast, Knox alleges infringement of his Fifth Amendment privilege against self-incrimination. We do not think that the different constitutional source for Knox's claim removes his case from the ambit of the principle laid down in those decisions. The validity of the Government's demand for information is no more an element of a violation of § 1001 here than it was in *Bryson*.[3]

The indictment charges that the forms Knox filed with the District Director of Internal Revenue contained false, material information,[4] an accusation that con-

---

[3] Knox argues that his false Forms 11–C were not filed "in any matter within the jurisdiction of any department or agency of the United States," a necessary element of a violation of § 1001, because *Marchetti* and *Grosso* held that the Internal Revenue Service was not authorized to require the filing of the forms. Even if his reading of those decisions were correct, his argument would fail for the reasons explained in *Bryson*. The Internal Revenue Service has express statutory authority to require the filing, and when Knox submitted his forms this Court had held that such a requirement raised no self-incrimination problem. *United States* v. *Kahriger*, 345 U. S. 22 (1953); *Lewis* v. *United States*, 348 U. S. 419 (1955). Further, in *Marchetti* we did not hold that the Government is constitutionally forbidden to direct the filing of the form, but only that a proper assertion of the constitutional privilege bars prosecution for failure to comply with the direction. See n. 6, *infra;* see also *Grosso* v. *United States*, 390 U. S., at 69–70, n. 7.

[4] Knox claims on appeal that neither Count Five nor Count Six charges any affirmative misstatements, but only omissions. Count Five charges that the statements on the form filed on October 14, 1965, "were not true, correct, and complete, in that the number of employees and/or agents engaged in receiving wagers in his behalf were misrepresented and understated, in that the number, name, special stamp number, street address, and city and state of em-

cededly falls within the terms of § 1001. However, Knox claims that the Fifth Amendment bars punishing him for the filings because they were not voluntary but were compelled by §§ 4412 and 7203 of the Internal Revenue Code. He points out that if he had filed truthful and complete forms as required by § 4412, he would have incriminated himself under Texas wagering laws. On the other hand, if he had filed no forms at all, he would have subjected himself to criminal prosecution under § 7203.[5] In choosing the third alternative, submission of a fraudulent form, he merely opted for the least of three evils, under a form of duress that allegedly makes his choice involuntary for purposes of the Fifth Amendment.

---

ployees and/or agents engaged in receiving wagers in the said JAMES D. KNOX's behalf had been omitted . . . ." Count Six contains language identical except for an apparently inadvertent difference in punctuation. Although the wording is not entirely clear, we need not decide whether on a fair reading the indictment encompasses affirmative misstatements. The District Court read the indictment as alleging that Knox violated § 1001 "by wilfully and knowingly making a false statement" on the forms, and it was on the basis of this construction that the court dismissed Counts Five and Six. We have no jurisdiction on this direct appeal to review the construction of the indictment. *E. g., United States* v. *Harriss,* 347 U. S. 612 (1954); *United States* v. *Petrillo,* 332 U. S. 1 (1947); *United States* v. *Borden Co.,* 308 U. S. 188, 193 (1939). But see *United States* v. *CIO,* 335 U. S. 106 (1948). See also n. 2, *supra.*

[5] Title 26 U. S. C. § 7203 provides: "Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

For this proposition Knox relies on *United States* v. *Lookretis*, 398 F. 2d 64 (C. A. 7th Cir. 1968), where, after this Court had remanded for reconsideration in light of *Marchetti*, see 390 U. S. 338 (1968), the Court of Appeals ruled that truthful disclosures made under the compulsion of § 4412 could not be introduced against their maker in a criminal proceeding. However, the Fifth Amendment was offended in *Lookretis* precisely because the defendant *had* succumbed to the statutory compulsion by furnishing the requested incriminatory information. Knox does not claim that his prosecution is based upon any incriminatory information contained in the forms he filed, nor that he is being prosecuted for a failure to supply incriminatory information. He has taken a course other than the one that the statute was designed to compel, a course that the Fifth Amendment gave him no privilege to take.

This is not to deny that the presence of §§ 4412 and 7203 injected an element of pressure into Knox's predicament at the time he filed the forms. At that time, this Court's decisions in *United States* v. *Kahriger*, 345 U. S. 22 (1953), and *Lewis* v. *United States*, 348 U. S. 419 (1955), established that the Fifth Amendment did not bar prosecution for failure to file a form such as 11–C. But when Knox responded to the pressure under which he found himself by communicating false information, this was simply not testimonial compulsion. Knox's ground for complaint is not that his false information inculpated him for a prior or subsequent criminal act; rather, it is that under the compulsion of §§ 4412 and 7203 he *committed* a criminal act, that of giving false information to the Government. If the compulsion was unlawful under *Marchetti*,[6] Knox may have a defense to

---

[6] We stressed in *Marchetti* "that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege

this prosecution under the traditional doctrine that a person is not criminally responsible for an act committed under duress.   See generally Model Penal Code §§ 2.09, 3.02 (Proposed Official Draft, 1962); *id.,* § 2.09, Comment (Tent. Draft No. 10, 1960).   It is only in this sense that there is any relevance to Knox's attempted distinction of this case from *Dennis, Bryson,* and their predecessors, *United States* v. *Kapp,* 302 U. S. 214 (1937), and *Kay* v. *United States,* 303 U. S. 1 (1938), on the ground that in those cases the false statements were voluntarily filed for the purpose of obtaining benefits from the Government.

Knox argues that the criminal sanction for failure to file, coupled with the danger of incrimination if he filed truthfully, was more coercive in its effect than, for example, the prospect that the petitioners in *Dennis* would lose their jobs as union officers unless they filed non-Communist affidavits.   While this may be so, the question whether Knox's predicament contains the seeds of a "duress" defense, or perhaps whether his false statement was not made "willfully" as required by § 1001, is one that must be determined initially at his trial.[7]   It

as to these provisions may not be criminally punished for failure to comply with their requirements.   If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes."   390 U. S., at 61.   Nothing before us indicates that the hazard of incrimination faced by Knox was less substantial than that faced by Marchetti, or that Knox would have been disqualified for any other reason from asserting the privilege in defense of a prosecution for failure to comply with § 4412.

[7] Rule 12 (b)(1) of the Federal Rules of Criminal Procedure, which cautions the trial judge that he may consider on a motion to dismiss the indictment only those objections that are "capable of determination without the trial of the general issue," indicates that evidentiary questions of this type should not be determined on such a motion.

is not before us on this appeal from dismissal of the indictment, and we intimate no view on the matter.

The judgment of the District Court is

*Reversed.*

Mr. Justice Douglas, with whom Mr. Justice Black concurs, dissenting.

In this case, as in *Bryson* v. *United States, ante,* p. 64, the relevant inquiry is whether "constitutionally speaking it was 'within the jurisdiction'" of a government agency to require the filing of certain information. *Id.,* at 74 (dissenting opinion). In *Marchetti* v. *United States,* 390 U. S. 39, 61, we held that the statutory requirement of filing Internal Revenue Service Form 11–C is not unconstitutional *per se.* It is clear, however, that under *Marchetti, supra,* and *Grosso* v. *United States,* 390 U. S. 62, the "jurisdiction" of the Internal Revenue Service to require this form to be filed is subject to the Fifth Amendment privilege against self-incrimination.

This is not a case where an individual, with knowledge that he has a right to refuse to provide information, nonetheless provides false information. Under the decisions in *United States* v. *Kahriger,* 345 U. S. 22, and *Lewis* v. *United States,* 348 U. S. 419, which were controlling at the time Knox filed his wagering form, Knox faced prosecution under 26 U. S. C. § 7203 for failure to file the form, despite claims of self-incrimination. The Government's requirement to file the wagering form was unconditional. The majority argues that by the terms of *Marchetti* the Government is not prohibited from requesting the form, but is only prohibited from prosecuting an individual for his failure to comply with the request. *Ante,* at 80, n. 3. The question in this case, however, is not whether the Government has the power to *request* the form to be filed, but whether it has the power to *require* the form to be filed. If Knox had

merely been requested to file the form and, with full knowledge of his right to silence under the Fifth Amendment, had done so voluntarily, we would have quite a different case. That is not this case. Under the scheme then in effect, the Government demanded unconditionally that Knox file the form, regardless of the fact that it would incriminate him. Heavy penalties were placed on a failure to file the form.

*Marchetti* and *Grosso* held that those in Knox's position have the Fifth Amendment right to remain silent irrespective of the statutory command that they submit forms which could incriminate them. Had Knox asserted his right of silence under the Fifth Amendment, it is clear that the Internal Revenue Service could not, consistently with *Marchetti* and *Grosso,* have required him to file the wagering form.* Thus any argument that the Internal Revenue Service did have "jurisdiction" to require the form to be filed in this case would have to rest on a theory that Knox had "waived" his Fifth Amendment right by not asserting it in lieu of filing the form. A similar claim was made in *Grosso,* where the petitioner had not asserted his Fifth Amendment right as to certain counts concerning his failure to pay the special occupational tax imposed by 26 U. S. C. § 4411. The Court there said:

> "Given the decisions of this Court in *Kahriger* and *Lewis, supra,* which were on the books at the time of petitioner's trial, and left untouched by *Albertson* v. *SACB* [382 U. S. 70], we are unable to view his failure to present this issue as an effective waiver of the constitutional privilege." 390 U. S., at 71.

---

*As the majority opinion states: "Nothing before us indicates that the hazard of incrimination faced by Knox was less substantial than that faced by Marchetti, or that Knox would have been disqualified for any other reason from asserting the privilege . . . ." *Ante,* at 83 n. 6.

That reasoning is equally applicable here, for *Kahriger* and *Lewis* were still on the books at the time Knox filed his form. And see *Leary* v. *United States,* 395 U. S. 6, 27–29.

For the reasons stated in my dissent in *Bryson, ante,* p. 73, and in MR. JUSTICE BLACK's separate opinion in *Dennis* v. *United States,* 384 U. S. 855, 875, if the Internal Revenue Service had no constitutional authority to require Knox to file any wagering form at all, his filing of a form which included false information in no way prejudiced the Government and is not, in my view, a matter "within the jurisdiction" of the Internal Revenue Service.

I would affirm the judgment below.