Albert MENGARELLI, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 24585.

United States Court of Appeals,
Ninth Circuit.

May 12, 1970.

Rehearing Denied July 9, 1970.

———◆———

Richard H. Foster, of Lewis & Foster, San Francisco Cal., for appellant.

Michael DeFeo (argued), Special Asst. U. S. Atty., Bart M. Schouweiler, Las Vegas, Nev., for appellee.

Before HAMLEY and WRIGHT, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge.

Appellant, who with his partner Richards, operated the Rendezvous Race Book in Las Vegas, Nevada, was convicted of a conspiracy [1] to evade or defeat the federal excise taxes imposed upon wagers.[2]

█ Appellant contends that his Fifth Amendment rights were violated under the doctrines of Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968) and Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). These cases hold

---

* The Honorable Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

1. 18 U.S.C. § 371.

2. 26 U.S.C. § 4401 et seq.

no more than that under the circumstances of them a person who properly invokes his Fifth Amendment rights may not be criminally prosecuted for failing to provide the information or to pay the tax required by the wagering tax statutes. Appellant did not rely on his Fifth Amendment rights. Rather he engaged in a calculated course of deceit which if successful would have enabled him to avoid any of the problems associated with a claim of privilege. One who engages in this form of self help does not properly invoke constitutional protection.

In Dennis v. United States, 384 U.S. 855, 867, 86 S.Ct. 1840, 1847 (1966) the Supreme Court announced the rule that "a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit." Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (U.S. Dec. 8, 1969), reaffirmed *Dennis* and United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (U.S. Dec. 8, 1969) applied the rule to the assertion of a claim of privilege under the Fifth Amendment in a case [3] involving false information given in connection with the wagering tax statutes. We are unable to distinguish United States v. Knox, *supra*, on the ground that *Knox* dealt with Section 18 U.S.C. § 1001 forbidding the making of false statements to agencies of the United States, while this case deals with conspiring to defeat a tax. In neither case is the prosecution based on a failure to furnish information. Without some element of deceit there is no crime in either case but once the element of deceit appears then the fact that the government ought not to

have asked the question or required the act is not a defense (Bryson v. United States, *supra*) whatever the form of the statute forbidding the deceit.

█ In a free swinging and loosely aimed argument appellant urges that the evidence was insufficient to warrant a conviction. With this we do not agree. The evidence was sufficient to show without dispute that:

The Rendezvous Race Book accepted bets on horse races and sporting events. Bets were made in two ways, one in which the patron paid the wagering tax and the other in which he did not. In those cases where the tax was paid the patron would orally place the bet with a clerk who would collect the amount of the bet plus the ten per cent tax. The clerk would then write the selection and the amount of the bet on a ticket, machine stamp it, with the date, time and a number and issue a duplicate to the patron. Some of the regular patrons who did not pay the tax were permitted to write the information as to their bets on plain white tickets. These tickets with cash in the amount of the bet only would be given to the clerk who did not put the information on the printed tickets and who did not issue to the customer any receipt or duplicate of any kind. A substantial [4] part of the business of the Rendezvous Race Book was done on the white slips and it is clear from the evidence not only that the patron did not pay the tax on the white slip wagers but that the Book itself did not. The tax returns filed (except for the month of February, 1966) disclosed wagers in almost the exact amount reflected on the printed tickets. The evidence leaves no

---

3. 18 U.S.C. § 1001.

4. Appellant urges that it was not shown that any substantial amount of tax was evaded. From observations conducted by treasury agents over a period of many months it appeared that a substantial portion of the business of the Book was done on the white slips. When the records of the Book were seized white slips for but one period of seven days in February, 1966, were found. The wagers shown on them totaled $70,762.00 as

against total wagers of $84,829.00 for that period. The Government could not claim that the tax had been evaded on the $70,762.00 because tax returns for February, 1966 filed after the defendants knew of the investigation, disclosed the totals on both the white and printed slips. The volume of bets shown on these white slips (the only ones seized) did tend to confirm the testimony of the government agents that the white slip bets were substantial.

doubt but that the Rendezvous Race Book did evade the tax on a substantial portion of its business and was operated in a manner calculated to accomplish that purpose.

Appellant and his partner were in personal charge of the operation. They could not avoid knowing what was being done by their customers and employees with the white slips and they personally sorted and otherwise dealt with them. Richards generally signed most of the tax returns but on at least two occasions appellant signed them. There was no proof of a specific written or oral agreement to evade the law, but from what was done, coupled with the partner's proximity to the business it could be fairly inferred that the partners had deliberately organized their operations so that by means of what they and the employees did the white slip scheme was used to conceal from the government substantial numbers of bets on which no tax was paid. No more was needed to prove the conspiracy and the overt acts alleged in furtherance of it.

Exhibit No. 14, a box of the printed Rendezvous Race Book slips, was introduced in evidence over appellant's objection that the exhibit had been illegally seized. In February, 1966, the agents of the Internal Revenue Service executed a search warrant describing the premises of the Rendezvous Race Sports Book. They interviewed one Harold Kline, a cashier, and from him learned that he had some of the records in his home. The officers had sidearms and did question Kline who refused to answer on Fifth Amendment grounds. Kline accompanied the officers to his home and turned the records over to the agents. Despite an order made on May 1, 1968, directing that any pre-trial motions be made by June 28, 1968, it was not until the trial, which commenced in February, 1969, that the attention of the court was called to the claim of illegal search and seizure. The court admitted the evidence, subject to a post-conviction motion to suppress.

■ At the hearing of the post-trial motion to suppress, appellant produced no evidence and relied upon the trial record. The United States produced evidence bearing upon appellant's pre-trial knowledge of the Government's possession of Exhibit 14. The trial court found that the motion to suppress was not timely. Without comment as to the timeliness of the motion to suppress we affirm the Court's finding that Kline did have authority and that the records were not secured by an unreasonable search and seizure.

Apart from the fact that Kline was a cashier and did have the records, there is no evidence of his authority. Appellant in his motion to suppress asserted Kline's lack of authority but made no effort to produce evidence in support of that assertion. Exhibit 14 consisted of records which appellant was required to keep and have available for inspection under Nevada law.[5] They were not records which disclosed any illegal activity. These were the records which in any sort of an audit or inspection the Rendezvous Race Book would have produced to prove compliance with state and federal law.[6] Under these circumstances we believe that the trial court was justified in inferring Kline's authority to deliver Exhibit 14 to the Government.

■ If, however, the inference is impermissible and the Government failed to sustain its burden of proving a valid consent,[7] still the records were not secured by reason of an unreasonable search and seizure. The Constitution condemns only unreasonable searches. It was said in United States v. Rabinowitz,

5. Regulation 5020(3) Nevada Gaming Commission adopted pursuant to specific statutory authority. Nev.Rev.Stats. § 463.157 (1967).

6. The regulation required Book to collect the federal tax from the player and maintain a record showing such collection.

7. See Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) that what is unreasonable is not determined by any fixed formula, and although the authority of *Rabinowitz* is diminished by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the rule still seems to be that the reasonableness of a search depends upon the facts and circumstances—the total atmosphere of the case—viewed in the light of established Fourth Amendment principles. There can be no question but that probable cause did exist for the search. No attack was made upon the validity of the warrant and it must be presumed that a magistrate had an opportunity to appraise that cause. On the authority of the warrant the internal revenue agents had lawful authority to seize the records at the Rendezvous Race Book. By reason of some unexplained course of dealing between the appellant and his employees the business records which would normally be expected to be at the place of business were not there but were in Kline's home. Whatever Kline's authority may have been, if he had authority to take the records he most certainly had authority to bring them back. Had he been requested to bring the records to the Book and had they been seized there, then the seizure would have occurred under the protective umbrella of the warrant. The officers did not invade Kline's home nor did they compel the delivery of the records. If the officers were at fault, the fault was in their failure to discern a difference (if there was a difference) between the authority of Kline to deliver the records to the Book where they might have been seized, rather than to turn them over at his home. In the atmosphere of the whole case we cannot believe that this failure rendered the taking of the records unreasonable.

We bear in mind that the rule which excludes evidence unconstitutionally secured has a prophylactic purpose—to discourage public officers from flouting the Constitution. In Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960) the Supreme Court stated the basis postulate of the exclusionary rule:

"The rule is calculated to prevent, not to repair. Its purpose is to deter —to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it."

We think it proper in determining what is reasonable in the atmosphere of a given case to determine whether the conduct of an officer is such that some sanction should be imposed on account of what that officer has done. Where, as here, the officer's wrong was at most a questionable misappraisal of an agent's authority, we think that the sanction of exclusion should not be imposed.

The case differs from the cases where the consent was given by a landlord or hotel clerk.[8] In those cases the basic possession of the place searched and the thing seized was not in the landlord or clerk; there was no entrusting of the thing seized to the landlord or the clerk; an officer would have no reason to believe that the landlord or clerk had any authority to deliver the tenant's or guest's personal property to the Government.

We have considered the other contentions made by appellant and we find no merit in them. We think it would serve no useful purpose to set out obviously untenable contentions and then dispose of them by elucidating the obvious.

Appellant was properly tried and convicted and the judgment is affirmed.

8. See Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Lus-tig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951).