Timothy LEARY, Defendant-Appellant,

v.

UNITED STATES of America,
Plaintiff-Appellee.

No. 29419.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1977.
Rehearing and Rehearing En Banc Denied
Feb. 16, 1977.

James A. McPherson, New Orleans, La., John G. Milano, Kent A. Russel, Jerry K. Cimmet, San Francisco, Cal., for Timothy Leary.

Edward B. McDonough Jr., U.S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U.S. Attys., Houston, Tex., for the U.S.

Before AINSWORTH and CLARK, Circuit Judges, and HUGHES, District Judge.

CLARK, Circuit Judge:

Dr. Timothy Leary appeals from his second conviction for importation of marihuana after an unsuccessful attempt to enter Mexico. He contends that his false declaration that he possessed no contraband upon reentry into the United States cannot be used to incriminate him because it violated his Fifth Amendment rights, that he did not transport the forbidden marihuana after failing to declare it, that the indictment's charge that his actions were "contrary to law" was impermissibly vague, that he had a right to possess marihuana for his personal use, and that the authorization to use his first trial testimony in the retrial was error. We affirm.

The United States Supreme Court reversed his first conviction in 1969. Most pertinent to today's case, the court declared that the use of the presumption of importation of marihuana violated due process. *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The retrial in 1970 resulted in conviction for transportation after illegal importation of marihuana. 21 U.S.C. § 176a (repealed 1970). During the pendency of his appeal from this second conviction, Leary became a fugitive. His appeal was consequently dismissed. It was reinstated in 1976 after he returned to the United States and his imprisonment commenced.

The fact matrix in which the present conviction occurred has been fully chronicled in our prior opinion and that of the Supreme Court in this matter. *Leary v. United States,* 383 F.2d 851 (5th Cir. 1967),

rev'd, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). In summary, after a trip from New York to Laredo, Texas, Leary, his daughter and three others were refused entrance into Mexico by that country's customs agents. At being turned back by Mexican officials, Leary testified he gave to his daughter three marihuana cigarettes and instructed her to discard them as the party traveled back across the international bridge. Shortly before reaching the United States customs, he discovered that she had not done so. After being asked at a secondary inspection station by United States customs officials whether he had anything to declare, Leary replied that he did not, that he had not even entered Mexico. The occupants were asked to get out of the car. An inspection turned up a single marihuana seed. Officials thereupon subjected each member of the Leary party to a strip search which resulted in discovery of the three marihuana cigarettes his daughter still had in her possession.

■ Leary acknowledges that there is no Fifth Amendment protection to the typical contraband importer who is asked whether he has anything to declare. An affirmative answer with resulting disclosure of illegal items in the declarant's possession, results only in the seizure of the contraband. *Walden v. United States,* 417 F.2d 698 (5th Cir. 1969). As stated in *Rule v. United States,* 362 F.2d 215 (5th Cir. 1966), and reaffirmed in *Walden,* declaration at the point of entry that contraband is possessed results in the declarant's not having entered the United States for purposes of the penal statutes.

Leary urges that this line of argument is not apropos to the unique U-turn facts of his case. The rationale employed in holding that a declaration does not result in self-incrimination, is that revealing drug possession does not provide a link in a chain which leads to evidence to prosecute an individual. *Walden v. United States; See Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). Unlike the typical importer, if Leary had stated that he possessed marihuana at the customs inspection station, he would necessarily also be admitting that he possessed marihuana in Texas before his attempt to enter Mexico. Though it might not have been physically impossible for Leary to have acquired the drugs during his extremely limited entry into Mexico, it would flaunt logic to argue that Leary did not possess the drug before he left Texas. This may explain why we have been cited to no Texas prosecution resulting from the declaring of contraband at the border to United States customs officials who then transmitted information of the declaration to state officials for their use.

■ The United States Supreme Court has declared that the issue of whether a valid self-incrimination claim exists is to be determined by whether the individual could hold a reasonable belief that the information will be used against him. Even the existence of legal or other barriers to the use against an individual of information gathered from him will not bar a Fifth Amendment claim if the declarant "reasonably believed"· to the contrary. *Maness v. Meyers.*

Since the United States Customs inspection station is situated inside the State of Texas, albeit a short distance, some degree of state possession and transportation of contraband occurs in any importation situation. It can be argued that the federal interest in the regulating of access of goods and individuals at international borders takes precedence over any state interest in prosecuting for such illegal possession of contraband. Truthful responses to customs agents' questions are a necessary aspect of this regulation. The government argues that if a state and the federal regulatory schemes are inconsistent, the state system must defer to the United States' interest to the extent of the conflict. *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 210–211, 6 L.Ed. 23 (1824).

■ We need not rely on such hoary precedent to reach a conclusion in the present case, however, nor need we decide that even if the State of Texas could not have ·used a declaration by Leary that he had contraband, whether Leary's reasona-

ble belief in such use would validly have permitted a Fifth Amendment claim, because Leary did not invoke the Fifth Amendment. Instead, he falsely responded that he did not have anything to declare. In *United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969), the Supreme Court held that despite the privilege against completing a wagering information form provided by the Internal Revenue Service, *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), an individual did not have a supportable self-incrimination defense to prosecution if he filed a false form. As the court in *Knox* characterized the distinction, an individual who responds falsely is not able to say he is being prosecuted for any incriminatory information the government has required him to submit. Indeed, the information submitted was not incriminatory since it did not reveal the truth. *See United States v. Mandujano,* 424 U.S. 564, 96 S.Ct. 1768, 1777, 48 L.Ed.2d 212 (1976).

Since Leary did not in any way invoke his Fifth Amendment protections against self-incrimination, he is not in a position to argue now that evidence acquired after his false declaration to customs officials was tainted.

Leary next contends that the statute used to prosecute him did not apply to the events which occurred. The statute as it then existed stated:

Notwithstanding any other provision of law, whoever, knowingly, with intent to defraud the United States, imports or brings into the United States marihuana contrary to law, or smuggles or clandestinely introduces into the United States marihuana which should have been invoiced, or receives, conceals, buys, sells, or *in any manner facilitates the transportation,* concealment, or sale *of such marihuana after being imported or brought in, knowing the same to have been imported* or brought into the United States *contrary to law* . . .

is guilty of an offense. 21 U.S.C. § 176a (repealed 1970) (emphasis supplied). The argument presented is that the importation did not become "contrary to law" until the marihuana was not declared. Since no transportation occurred after the failure to declare, no offense occurred. The same argument has been presented by previous defendants to no avail. *E. g., United States v. Hudson,* 431 F.2d 468 (5th Cir. 1970); *United States v. Houle,* 428 F.2d 816 (5th Cir. 1970); *Walden v. United States,* 417 F.2d 698 (5th Cir. 1969).

There is no inconsistency in requiring that an individual declare contraband at the first opportunity or be guilty of transporting after importing contrary to law (i. e., without declaring), and also holding that no offense has been committed if the contraband is timely declared, despite the fact that some distance past the international boundary has been traversed. An apparent conflict would occur only if we disregard the time frame in which the law deems knowledge of illegal importation to have existed. Importation occurred as soon as the marihuana cigarettes crossed the United States-Mexican border at the thread of the Rio Grande River. However, that importation does not become contrary to law until no declaration is made at the inspection station. If the required declaration is made no crime has occurred because the declaration has been made as soon as possible. On the other hand, if the declaration is not made when it was required, the illegality reverts to embrace the importation from the point the border was crossed until the goods are seized. Similarly, the knowledge that the goods are being imported contrary to law relates back to the initiation of the importation—the moment the border was crossed. Leary was properly convicted for transportation of marihuana.

The third alleged error involves the trial court's first-trial comments in which the jury was told there were "uncertainties and questions" concerning one of the government's theories of the case, namely, that the transportation which the indictment embraced was that from the Mexican bor-

der to the inspection station at United States customs. Another theory, and the principal one relied upon at the first trial, was that the transportation involved occurred when Leary drove from New York to Laredo, Texas. However, the Supreme Court in reversing Leary's first conviction held that the presumption that marihuana was imported from Mexico was an irrational one, thereby invalidating the government's principal argument. Since the transportation of the drug from New York could not be deemed to be after importation, the only theory advanced at the second trial was that the marihuana was not imported until Leary returned across the international bridge.

■ The trial court's first-trial statement that there were "uncertainties and questions" concerning this theory cannot be read as a judgment of acquittal on that theory of the case, making this second prosecution violative of the double jeopardy clause of the Fifth Amendment. The remarks are read out of context, but more significantly they do not control reprosecution. A district judge may make statements concerning his perception of the facts in a case, but they are not binding upon a jury. *Kyle v. United States,* 402 F.2d 443 (5th Cir. 1968). It is equally axiomatic that they cannot operate to bar a subsequent prosecution.

■ An attack is also made that the language of the indictment charging the importation to be "contrary to Law" was impermissibly vague. In *Keck v. United States,* 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505 (1899), the court held that an indictment only informing a defendant that he was accused of importing diamonds "contrary to law" was fatally deficient. This court has elaborated upon the meaning of *Keck* by explaining that an indictment is not defective because it tracks the language of a penal statute unless the statute is not self-contained. *Babb v. United States,* 218 F.2d 538 (5th Cir. 1955). In *Babb,* the jury was charged as to failure to import cattle according to laws as set out in entirely different statutes from the one tracked in

the indictment. Similarly, if an essential element of the crime is omitted in the statute, the indictment must supply it with certainty. *Babb* distinguished prosecutions under 21 U.S.C. § 174 (repealed 1970), dealing with the importation of opium, as being importation which was unlawful *per se. Id.* at 541. This reason is equally applicable to prosecutions under § 176a. The statement that the *per se* unlawful importation was contrary to law was sufficiently informative to the defense. No error occurred in refusing to dismiss the indictment.

■ Dr. Leary questions the right of customs officials or any other government agent to prevent his possession of marihuana. It is contended that private possession of contraband drugs is protected by the same right of privacy which permits adults to examine pornography in private. *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). The *Stanley* court expressly held that its conclusions had no bearing on the right of governments to prohibit the use and possession of narcotics. *Id.* at 568 n. 11, 89 S.Ct. at 1249 n. 11. In rejecting a claim similar to Leary's, this court in *United States v. Drotar,* 416 F.2d 914, 917 (5th Cir. 1969) referred to this *Stanley* footnote for authority. There is no merit in the present contention.

■ The final argument offered by Leary is that he was improperly prevented from testifying at his second trial because the trial court refused to exclude the use as cross-examination of Leary's testimony from his first trial. He argues that this testimony was the product of the presumption invalidated by the Supreme Court. We are referred to *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968), which held that testimony rebutting an illegally acquired confession could not be offered in a retrial after reversal of the initial conviction. The use of an improper presumption is a totally different evidentiary violation from the use of an illegal confession. There is no need for the invocation of the exclusionary rule, which serves to deter future unlawful conduct, when the illegality is not a potentially repetitive oc-

currence. *Stone v. Powell,* —— U.S. ——, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) makes evident that deterrence is the keystone of the exclusionary rule. That purpose has no relevance here. Moreover, *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), teaches that a defendant's Fifth Amendment rights do not bar the use of an improperly acquired confession for cross-examination.

Finding no merit to any of the contentions raised, the conviction is

AFFIRMED.