**UNITED STATES OF AMERICA, Plaintiff**

**v.**

**PETER W. CLARK and CLARK BROTHERS ENTERPRISES, INC., Defendants**

CRIM. NO. 1999/81

District Court of the Virgin Islands

Division of St. Thomas and St. John

February 24, 2000

KIM L. CHISHOLM, AUSA, *Office of the United States Attorney*, St. Thomas, VI., *for Government*

JOSEPH MINGOLLA, ESQ., St. Thomas, VI., *for Defendants*

FINCH, *Chief Judge*

## MEMORANDUM OPINION

FINCH, *Chief Judge*

This matter comes before the Court on Defendants' Motion to Dismiss Indictment pursuant to Fed. R. Crim. P. 12(b). For the reasons expressed below, Defendants' motion will be denied.

### I. Background

Peter Clark is president of Clark Brothers Enterprises, Inc. ("CBE"), a closely-held, St. Thomas corporation. Defendants Peter Clark and CBE (hereinafter collectively "Clark") are charged with one count of wire fraud in violation of 18 U.S.C. § 1343. The federal wire fraud charge is based on the allegation that Clark caused the wire transmission in interstate commerce of $150,000 — allegedly the proceeds of a fraudulently-obtained loan — from lender Transcaribbean Trade, Ltd.'s ("Transcaribbean") bank in Miami, Florida to Clark's bank in St. Thomas, Virgin Islands. The indictment alleges the following facts:

CBE was founded as a limited partnership for the development of certain parcels of real estate in St. Thomas known as Magens Ridge Condominiums. The condominiums were designed to consist of eight single-family units, numbered 1 through 8. In December 1991, Clark entered into a contract to sell the property on which condominium Unit 6 would be built for $125,000. The Unit 6 buyers delivered $100,000 to Clark on or before February, 1992. Closing was to take place on November 1, 1992, but Clark was unable to close on that date because construction of the unit was incomplete and liens remained on the property. A second closing date was set, the buyers paid the remaining $25,000 on the

contract, and Clark again failed to close. A similar situation is alleged to have occurred with the sale of Unit 3. At the date of the charges in this matter, Clark had received $105,000 on the contract for sale of Unit and $125,000 on the contract for sale of Unit 6.

The above transactions became important to this case when Clark allegedly committed fraud in obtaining a loan from Transcaribbean in the amount of $150,000. The Government's allegations of fraud are based on the fact that Clark in essence secured the loan with property it did not own, to wit, with a mortgage on the Unit 3 and Unit 6 properties. In obtaining the loan, Clark allegedly represented that it possessed good title to Units 3 and 6, and failed to disclose to Transcaribbean the existence of the executed contracts of sale and the payments made by the Unit 3 and Unit 6 buyers.

The Government alleges Clark devised a "scheme and artifice to defraud" Transcaribbean and caused the $150,000 loan amount to be conveyed to Clark by interstate wire transfer from Transcaribbean's bank account in Miami. In its Motion to Dismiss Indictment pursuant to Fed. R. Crim. P. 12(b), Clark argues: (1) that the Indictment does not provide Clark with sufficient notice of the charges, in violation of Clark's Sixth Amendment rights, and (2) that the District Court does not have federal subject matter jurisdiction to hear this case where the federal charge is based on a one-time interstate wire transfer of loan monies by a local businessman to a local real-estate developer, for the purpose of funding a local real-estate project.

### II. Standard for Dismissal Under Fed. R. Crim. P. 12(b)

In analyzing Clark's Motion to Dismiss Indictment under Rule 12(b), the Court must accept as true the facts alleged in the indictment and determine if those facts constitute a violation of the law under which Clark is charged. *U.S. v. Stewart*, 955 F. Supp. 385, 386 (E.D.Pa. 1997); *see also, United States v. Frankfort Distilleries, Inc.*, 324 U.S. 293, 296, 89 L. Ed. 951, 65 S. Ct. 661 (1945). If the facts alleged do not constitute a violation of federal law, the charges should be dismissed. *Stewart*, 955 F. Supp. at 386. The Court may not speculate as to whether the Government can sustain the burden of proving the allegations. *See id.; Frohwerk v. United States*,

431

249 U.S. 204, 209, 63 L. Ed. 561, 39 S. Ct. 249 (1919). The sole function of a motion to dismiss is to test the sufficiency of the indictment to charge an offense. It is not a device for a summary trial of the evidence. *United States v. Winer*, 323 F. Supp. 604, 605 (E.D.Pa. 1971), citing *United States v. Sampson*, 371 U.S. 75, 83, 9 L. Ed. 2d 136, 83 S. Ct. 173 (1962).

### III. Whether the Indictment Provides Sufficient Notice of the Charges

■■ Clark first argues that the Indictment is not sufficient to provide proper notice of the charges, in violation of Clark's Sixth Amendment rights.[1] "An indictment is sufficient if it (1) alleges all of the elements of the offense, (2) fairly informs the defendant of that which he must be prepared to meet in the preparation of his defense, (3) protects him against double jeopardy, and (4) enables the Court to determine whether the facts alleged are sufficient in law to withstand a motion to dismiss or to support a conviction." *Winer*, 323 F. Supp. at 605. The sufficiency of an indictment must be determined from the words of the indictment, and the Court is not free to consider evidence not appearing on the face of the indictment. *See United States v. Mertine*, 64 F. Supp. 792, 794 (D.N.J. 1946).

■ In the present case the Indictment alleges that Clark engaged in a scheme to defraud Transcaribbean. The Indictment, as stated in the facts above, describes the object of the scheme (obtaining $150,000), sets forth the manner of executing the scheme (entering into fraudulent loan agreement), alleges a series of acts by Clark to effect the object of the scheme (misrepresenting the contracts of sale on the Unit 3 and Unit 6 properties), and alleges the relation of the scheme to interstate commerce (wire transfer). All elements of the charge are alleged. Therefore, applying the above tests, the Indictment sufficiently charges Clark with a violation of 18 U.S.C. § 1343.

---

[1] If, as the Government suggests, this argument by Clark challenges the sufficiency of the evidence set forth in the Indictment rather than the Indictment itself, that argument fails. It is well established that "the sufficiency of an indictment may not be properly challenged by a pretrial motion on the ground that it is not supported by adequate evidence." *United States v. Blackwell*, 954 F. Supp. 944, 955 (D.N.J. 1997), citing *United States v. Knox*, 396 U.S. 77, 83, 24 L. Ed. 2d 275, 90 S. Ct. 363 (1969).

## IV. Federal Subject Matter Jurisdiction[2]

Clark next argues that the District Court does not have federal subject matter jurisdiction to hear this case where the federal charge is based on a one-time interstate wire transfer of loan monies by a local businessman to a local real-estate developer, for the purpose of funding a local real-estate project.

The District Court of the Virgin Islands has subject matter jurisdiction over the prosecution of violations of federal criminal statutes occurring in the Virgin Islands. *See* the Revised Organic Act of 1954, § 22(a), as amended, 48 U.S.C. § 1612. Clark is charged with acts occurring in the Virgin Islands constituting wire fraud under 18 U.S.C. § 1343, which states:

> Whoever, having devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000.00 or imprisoned for thirty years, or both.

18 U.S.C. § 1343.

Clark does not dispute that the Court possesses jurisdiction over federal wire fraud violations under the Organic Act. Instead Clark argues that the Court lacks jurisdiction in this case because the Organic Act confers no jurisdiction over *local* criminal matters. Therefore, the dispute turns on whether the offense in this case is of a local or a federal nature.[3]

---

[2] For purposes of analyzing the wire fraud statute, cases involving the nearly identical mail fraud statute are sufficiently analogous. *See United States v. Frey*, 42 F.3d 795, 797, n. 2 (3d Cir. 1994) ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses.").

[3] Clark cites *United States v. Lopez*, 514 U.S. 549, 131 L. Ed. 2d 626, 115 S. Ct. 1624 (1995), and its progeny in support of the argument that there is no sufficient interstate nexus to

The jurisdictional question before the Court, then, is whether the alleged one-time wire transfer between local businesspeople concerning a local real-estate development constitutes a sufficient nexus with interstate commerce to bring the alleged act under the purview of the federal wire fraud statute and before this Court. In other words, is the wire transfer sufficiently closely related to Clark's scheme to bring the conduct within the statute? *See United States v. Maze*, 414 U.S. 395, 399, 38 L. Ed. 2d 603, 94 S. Ct. 645 (1974). Clark argues that it is not, because (1) Clark did not intend or anticipate the use of interstate wire for the transfer of the money in question, and (2) the wire transfer was a one-time incident, isolated from other purely-local factors surrounding the transaction. Each of these arguments fails under the law.

## A. Clark's Intent That the Wire Transfer Occur in Interstate Commerce

Courts have routinely held that "there is no mens rea requirement as to the purely jurisdictional element of interstate communication under the wire fraud statute." *U.S. v. Blackmon*, 839 F.2d 900, 908 (2nd Cir. 1988). The element of interstate nexus is not a substantive element of the offense, but arises only from constitutional limitations on congressional power over intrastate activities under the Commerce Clause. *Id.* The only mens rea requirements are (1) that the defendant be party to a scheme to defraud, and (2) that the use of wire communication in general be reasonably foreseeable, to satisfy the causation element of the offense. *U.S. v. Bryant*, 766 F.2d 370, 375 (8th Cir. 1985). Therefore, for the purposes of a motion to dismiss, it is sufficient that Clark could reasonably have foreseen the use of wire communication by a third party

provide federal jurisdiction in this case. Reliance on this line of cases is misguided. *Lopez* involved a challenge to the Gun Free School Zones Act, and *struck down the statute as unconstitutional for its lack of a jurisdictional element* ensuring that the act charged affects interstate commerce.

The constitutionality of the wire fraud statute is not at issue in the instant case. The wire fraud statute contains a jurisdictional element requiring that defendants "use or cause the use of interstate wire facilities," and has repeatedly survived constitutional challenges. *See, United States v. Conner*, 752 F.2d 566 (11th Cir. 1985); *United States v. Gartman*, 145 F. Supp. 420 (E.D.Pa. 1956); *U.S. v. Bohonus*, 628 F.2d 1167 (9th Cir. 1980). The issue in the instant case is the nexus between Clark's actions and interstate commerce, and does not involve the constitutionality of the statute.

whether or not the interstate nature of the communication was reasonably foreseeable. *Blackmon*, 839 F.2d at 908. "It is not necessary that the scheme contemplate the use of the [interstate wire] as an essential element." *Pereira v. United States*, 347 U.S. 1, 8, 98 L. Ed. 435, 74 S. Ct. 358 (1954).

■ Based on this reasoning, Clark's argument that it had no reason to know Transcaribbean would wire the money to St. Thomas from an out-of-territory bank should fail. It is foreseeable that Transcaribbean's conveyance of $150,000 to Clark would come via electronic wire. In fact, it is likely that Clark fully expected the money by wire, as Transcaribbean could not have completed the transfer without first obtaining the necessary account information from Clark. Whether Clark could reasonably have foreseen the *interstate nature* of the wire communication is irrelevant. It is sufficient, for purposes of sustaining the charges in the Indictment, that Clark could reasonably have foreseen the use of wire communication in the transaction generally. *See Blackmon*, 839 F.2d at 908.[4]

## B. Whether the Wire Transfer was an Isolated Element of the Loan Transaction Insufficient to Bring the Otherwise Local Transaction Under the Federal Statute

Clark argues that the wire transfer was an isolated segment of a purely local transaction, and should not be the basis for federal jurisdiction. In support of this argument, Clark submits that the transaction involved only one interstate wire transfer, and everything else about the transaction was local to St. Thomas, to wit: Franklin Martinez, the lender and president of Transcaribbean, is a St. Thomas resident and has substantial business interests in the Virgin Islands. Those interests include that Martinez is an officer and part-owner of Colombian Emeralds, Inc. and its subsidiaries, and a part-owner of Sea Wind Food Distributors, Inc., Clark asserts

---

[4] A wire fraud conviction requires proof of "(1) a scheme to defraud, and (2) the use [causation] of interstate wire communication in furtherance of the scheme." *United States v. Izydore*, 167 F.3d 213, 219 (5th Cir. 1999). The Motion to Dismiss is an improper vehicle for assertions that the Government cannot prove these elements based on what it has alleged. Discussion of whether Clark caused the use of interstate wire in furtherance of its scheme is "substantially founded upon and intertwined with evidence concerning the alleged offense," and should be deferred until trial. *United States v. Blackwell*, 954 F. Supp. 944, 954 (D.N.J. 1997).

435

that federal jurisdiction is inapposite because the transaction occurred between Martinez and Peter Clark —both local businessmen — and involved a loan to fund a local real-estate development.

This argument fails because the Court may assume jurisdiction on the basis of a single interstate wire communication. *See United States v. Pecora*, 693 F.2d 421, 424 (5th Cir. 1982) (holding that a federal court can assume jurisdiction over a local bribery case, involving only local residents, on the basis of a single interstate telephone call).

■ Moreover, facts alleged by Clark about the locality of the transaction are outside the four corners of the Indictment and improper for consideration on the Motion to Dismiss. Where a defense is "substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and should be deferred until trial." *United States v. Blackwell*, 954 F. Supp. 944, 954 (D.N.J. 1997); *see also, U.S. v. Ayarza-Garcia*, 819 F.2d 1043, (11th Cir. 1987) (where question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial). Under the facts of this case, the question of whether the transaction was so "local" in nature as to sever any nexus between the alleged fraud and the interstate wire transfer is intermeshed with questions of whether Clark "caused" the use of interstate commerce, i.e., whether such use was reasonably foreseeable. As such, dismissal at this time is inappropriate.

### V. Conclusion

For the foregoing reasons, Clark's Motion to Dismiss Indictment is denied. An appropriate Order is attached.

### ORDER

This matter comes before the Court on Defendants' Motion to Dismiss Indictment pursuant to Fed. R. Crim. P. 12(b). In accordance with the attached Opinion, it is hereby

ORDERED that Defendants' Motion to Dismiss is DENIED.