EASTERBROOK, Circuit Judge,
concurring.
I agree with my colleagues’ conclusion that Hill can proceed with his claims under the Fourth Amendment. This enables him to recover damages for any improper entry, force, or threats the agents employed. It also makes it unnecessary for us to discuss his Fifth Amendment theories. If he were seeking compensation for his incarceration, then we would have a difference between the implications of the Fourth and Fifth Amendment theories. But I do not understand Hill’s complaint, or his brief, to seek compensation for anything other than the rough treatment that he says he received at the agents’ hands. A claim so limited is independent of what he said in response and can proceed under the rationale of Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), without any problem under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).
I do not join the portions of the majority opinion that see a potential Heck problem (as applied to one aspect of Hill’s Fifth Amendment theory) in the fact that Hill lied in response to one question, then pleaded guilty to violating 18 U.S.C. § 1001. My colleagues assert that a person who lies in response to implied threats of physical force lacks the mental state required for a conviction under § 1001. Whether that is so is not an issue discussed in the parties’ briefs, and I am not at all sure that it is so. A person who tells a material falsehood, knowing it to be false and knowing that his audience includes agents of the FBI or IRS, violates § 1001; no other mental state need be shown. See Brogan v. United States, 522 U.S. 398, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998) (holding that false exculpations violate § 1001 and rejecting an invitation to add requirements or defenses in common-law fashion).
The law has ways to resist wrongful coercion to speak, but lying is not among them. “[Ojur cases have consistently— indeed without exception — allowed [criminal] sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry. See, e.g., United States v. Knox, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); Bryson v. United States, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969); Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); Kay v. United States, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938); United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205 (1937).” United States v. Mandujano, 425 U.S. 564, 577, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). My colleagues treat these cases as if they stand for no more than the proposition that one cannot defend against a perjury or § 1001 prosecution by contending that the question should not have been asked. They say that, all right, but they say more too.
*251 For example, the defendants in Dennis contended that they could not be convicted of lying, in affidavits denying any connection to the Communist Party, because a statute had made an unconstitutional threat:' any labor official who failed to execute a non-Communist affidavit forfeited for himself and his entire union all benefits of federal labor law. Defendants did not contend that the government was forbidden to ask about their political affiliations; they contended, rather, that the government was forbidden to coerce them to answer, and that because the coercion violated the Constitution they were entitled to give false answers. The Court rejected that contention, as it has also rejected the contention that a witness wrongly threatened with imprisonment for remaining silent (a threat that violates the Self-Incrimination Clause) may respond to the threat by lying.
In Knox the Court sustained a conviction for violating § 1001 by filing a false wagering-tax return, even though it had earlier held that the statute requiring such a return violated the Self-Incrimination Clause. That statute made silence a crime. People who had gambling income were coerced to speak on pain of imprisonment — and it was this wrongful coercion that Knox tried to raise as a defense to the charge of lying. But the Court had none of it and concluded that remaining silent and facing jail for that silence, or telling the truth, were the only allowed responses.
Maybe there is, or should be, a difference for the purpose of § 1001 between coercion characterized by unconstitutional threats of imprisonment and unconstitutional threats of force. But my colleagues do not identify a case in which the Supreme Court has drawn that line, and as I’ve mentioned the parties have not briefed the subject. At page 7 the majority cites Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir.2003), and McCann v. Neilsen, 466 F.3d 619, 621 (7th Cir.2006), for the proposition that a person who lies when forced to speak cannot be convicted of any crime (which if so would make Hill’s contentions inconsistent with his conviction’s validity), but neither decision deals with a person wrongfully induced to speak; the majority has added in brackets vital language that does not appear in Okoro or McCann. The issue I have flagged is open to full consideration in a case that presents it.
My colleagues also suggest (op. at 247) that Hill would have had a duress defense. Dixon v. United States, 548 U.S. 1, 6-7, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006),' the sole cited authority, says no such thing; it acknowledges the existence of duress as a doctrine but does not consider when it blocks a conviction. United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980), which my colleagues do not cite, does address that question— for a “necessity” defense, to be sure, but duress and necessity are fraternal doctrines. Bailey holds that an accused cannot assert the defense if he had “a chance both to refuse to do the criminal act and to avoid the thteatened harm.” 444 U.S. at 410-11, 100 S.Ct. 624. Hill does not contend that he was mistreated to get him to lie; he maintains that he was mistreated to get him to speak. He could have avoided the threatened harm by telling the truth, so under Bailey he could not have prevailed on a defense of duress or necessity. (My colleagues’ suggestion that Hill might have thought that he needed to lie is inconsistent with the fact that he fessed up immediately after lying; this scotches any contention — which Hill himself does not advance — that the interrogators compelled him to lie.)
Hill does not contend that he was under duress. The defendants likewise do not maintain that Hill’s theories imply (or even *252 could imply) that the § 1001 conviction is invalid because he lacked the mens rea needed for conviction or was subject to duress. Instead they maintain that Heck bars the whole suit because an illegal entry (a violation of the Fourth Amendment) would have supported a motion to suppress evidence. The panel unanimously rejects that contention, which is inconsistent with Wallace. We should have stopped with that conclusion. There are good reasons why courts should confine themselves to issues raised and briefed by the parties; this case illustrates them. The majority’s unguided journey through theories of criminal responsibility may make it unduly hard to enforce § 1001, which isn’t remotely what the Supreme Court set out to accomplish in Heck. I hope that the court will have an open mind when, in some future case, these subjects matter and the litigants join issue.